[No. 1113, March 2, 1906.]

BENJAMIN H. DYE, et al., Appellees, v. H. C. CRARY, et al., Appellants.

### SYLLABUS.

1. Matters of law determined upon a former appeal become the settled law of the case, are binding upon the court and the litigants and cannot be reviewed on second appeal.

2. In order to establish an equitable estoppel against one asserting his title to real property, the party attempting to raise it must show either an actual fraudulent representation or concealment or such negligence as would amount to a fraud in law, and that the party setting up such estoppel was actually misled thereby to injury.

3. One who buys an interest in an unpatented mining claim at a void judicial sale and pays the portion of the assessment work due from the judgment debtor before the time to redeem has fully expired, taking a receipt therefor only, is

not subrogated to the rights of the party seeking the forfeiture, and his payment and its acceptance prevents the forfeiture as against the judgment debtor.

Appeal from the district court of Socorro county, before FRANK W. PARKER, Associate Justice. Affirmed.

H. B. FERGUSSON, and ELFEGO BACA, for appellants.

The attachment laws of New Mexico authorize the issuance of alias writs of attachment.

> Comp. Laws, N. M., 1897, Sec. 2697, and Secs. 2871, 2727.

In Iowa it has been held that such writs may issue under the inherent power of the court.

> Hamill v. Phenicie, 9 Iowa, 525; Elliott v. Stevens, 10 Iowa 418; Session Laws of N. M., 1905, Chap. 113, Sec. 9.

Alias and plures writs of citation were the practice at common law, and "also recognized as the practice in this territory."

> Comp. Laws 1897, Sec. 2954, and Sec. 2685, Sub-Sec. 28; 24 Am. & Eng. Enc. of Law (Old Ed.) p. 524; 1 Wade on Attachments, Sec. 157.

In considering a collateral attack the distinction should be carefully borne in mind between an irregular or erroneous acquiring of jurisdiction, and not acquiring jurisdiction at all. In the latter case, subsequent proceedings are absolutely void and may be ignored on collateral attack. In the former case they are only voidable and can only be affected by direct attack.

> 1 Freeman on Judgments, Secs. 126-130; 1 Black on Judgments, Secs. 170, 272; 17 Am. & Eng. Ency. of Law, 1068, Note 1, and 1069, Note 2.

Authorities controlling in direct attack on a judgment, are not in point in a collateral attack.

> Voorhees et al., v. The Bank of the United States, 10 Pet. 499; Huff v. Hutchinson, 14 How. 356; Keybers v. Macomber, 7 Pac. (Cal.) 338; Burke v. Interstate, etc., Ass'n. 64 Pac.

Dye v. Crary.

879; Isaacs v. Prier, Fed. Cas. No. 7007, (Opinion by Judge Dillon.)

Wherever the right and the duty of the court to exercise its jurisdiction depend upon the decision of the question it is invested with power to hear and determine, whether its judgment, right or wrong, is impregnable to collateral attack, unless impeached for fraud.

Foltz v. St. Louis, etc., Ry. Co. 60 Fed. 316; Board of Com'rs. v. Platt, 79 Fed. 467; Cornett v. Williams, 20 Wall. 249; Manson v. Duncanson, 166 U. S. 533; and see, Graff v. Louis, 71 Fed. 591; Hatcher v. Hendric, 133 Fed. 267; Mellin v. Moline Iron Co. etc., 131 U. S. 352; Skinner v. Moore, 30 Am. Dec. 155-164; Hardy v. Beaty, 19 S. W. 778.

Where the subject matter of the suit is one which falls within the cognizance of a court of general jurisdiction, and a petition or bill calling for the exercise of the power of the court is filed, and service of process made, which the court finds or holds to be sufficient, and renders judgment, such judgment though it may be reversed on error or appeal, is not void for reason of defects in the petition or in the mode of service or return of the officer.

Miller v. U. S. 11 Wall. (78 U. S.) 268-299, per Strong, J.; Grignon's Lessee v. Astor, 2 How. (43 U. S.) 339; Cooper v. Reynolds, 10 Wall. (77 U. S.) 308; Voorhees v. Bank, 10 Peters (35 U. S.) 449-474; Morrow v. Weed, 4 Iowa, 77 and authorities there cited; Hart v. Seixas, 21 Wend. 40; 1 Smith's Leading Cases, 378, and American Notes to Creppe v. Durden (Cowp. 640).

Any other rule would unsettle titles, and has nothing to recommend it in new state, where property is so rapidly increasing in value.

21 Fed. Cas. No. 12251; 1 Freeman on Judgments, Sec. 130; 1 Black on Judgments, Sec. 274; Drake on Attachment, Secs. 447-8; Tilton v. Cofield, 93 U. S. 163; Colfax v. Richardson, 54 Pac. 359; McNitt v. Turner, 16 Wall. 366; Paine v. Moreland, 15 Ohio,

445; Cochran v. Loring, 17 Ohio, 432; Mathews v. Densmore, 109 U. S. 216; Simmons v. Saul, 138 U. S. 439; Mohr v. Maniere, 101 U. S. 417.

The presumptions indulged in support of the jurisdiction of a court of record whose judgment is collaterally attacked, if, as in the case now before this court, such judgment has been followed by a sale to an innocent purchaser are conclusive of this case. If the original writ of attachment is for any reason unavailing, the main suit does not abate, but remains as if originally brought without attachment.

Staab v. Hersch, 3 N. M. 209; Brown v. Isabell, 11 Ala. 1009.

This principle is of more universal application in proceedings in rem after a final decree by a court of competent jurisdiction over the subject matter.

Sargent v. State Bank of Indiana, 12 Howard 385-6; Voorhees v. Bank, 10 Peters, 473, and Grignon's Lessee v. Astor, 2 How. 319.

Therefore every presumption, not inconsistent with the record, is to be indulged in favor of its jurisdiction.

Kempe's Lessee v. Kennedy, 5 Cranch 173; Voorhees v. Bank of the U. S., 10 Pet. 449; Grignon v. Astor, 2 How. 319; Harvey v. Tyler, 2 Wall. 328; Applegate v. Lexington, etc., Mining Co., 117 U. S. 255; also, White v. Crow, 110 U. S. 183; Cornett v. Williams, 20 Wall. 249.

Titles acquired under the proceedings of courts of competent jurisdiction must be deemed inviolable in collateral action, or none can know what is his own.

Grignon's Lessee v. Astor, 2 How. 319; Gulickson v. Bodkin, 80 N. W. 783.

Having decided that the levy of the alias writ of attachment upon the property of the defendant was a valid seizure of the rem, and such property having been sold to satisfy the judgment debt, such decision of the court can be corrected, if erroneous, only by direct attack, and cannot be reversed in any collateral attack.

Dye v. Crary.

Graff v. Louis, 71 Fed. 591; Manson v. Duncanson, 166 U. S. 533; Also Supreme Court Rep. Vol. 17, p. 647; 1 Black on Judgments, Section 274; See also, Graff v. Louis, 71 Fed. Rep. 591.

Presumptions in favor of judgments collaterally attacked, especially after judicial sale.

1 Black on Judgments, Section 271; Salisbury v. Sands, Fed. Cas. No. 12251, decision by Judge Dillon; citing Miller v. U. S. 268, 299; Grignon's Lessee v. Astor, 2 How. 339; Railroad Co. v. Stimpson, 14 Pet. 458; Cooper v. Reynolds, 10 Wall. 308; Voorhees v. Bank, 449, 474; Fed. Cas. No. 13092 (Smith v. Pomeroy.

The presumption in favor of jurisdiction where judgment is collaterally called in question is conclusive—the question is to be decided only by inspection of the judgment roll, and no extensive evidence is admissible.

See also the following:

Sacramento Bank v. Montgomery, 81 Pac. 138; 1 Black on Judgments, Secs. 271-7; 1 Freeman on Judgments, Secs. 1311-2-3-4; Treat v. Maxwell, (Me.) 19 Atl. 98; Robinson v. Fair, 128 U. S. 53; 17 Am. & Eng. Enc. of Law (New) p. 1080, head of "Conclusiveness of Presumption," and Note 5, Idem p. 1081, Note 2; 12 Enc. of Pl. and Pr. p. 205, Note 2, p. 207, Note 1, and p. 208, note 1.

General expressions in an opinion, which are not essential to dispose of a case, are not permitted to control the judgment in subsequent suits.

Harriman v. Northern Securities Co. 197 U. S, 244; Cohens v. Virginia, 6 Wheat. 399; Carroll v. Carroll, 16 How. 275; Insley et al., v. United States, 150 U. S. 512; Hendrick v. Whittemore, 105 Mass. 23; Rose v. D. V. etc. R. Co., 47 Iowa, 420.

Attachment proceedings conducted by a court of gen-

eral original jurisdiction are entitled to the same presumptions as other judgments of such courts.

> Van Waggeman v. Carpenter, 61 Pac. 698.

The legislature has plenary power in enacting attachment laws.

> Robinson v. Hesser, 4 N. M. 282, 288; Cleland v. Tavermir, 11 Minn. 126.

The manner in which such jurisdiction (in attachment) should appear is regulated by statute.

> 1 Wade on Attachment, Sec. 38 (N.) 6.

The legislature remitted the matter of writs subsequent to the first, to the discretion of the court.

> Crepps v. Durden, 1 Smith's Leading Cases, 1009; Bruce v. Osgood, 56 N. E. 25; Simmons v. Saul, 138 U. S. 439; Drake on Attachment, Sec. 447-8; Colfax v. Richardson, 54 Pac. 359; Paine v. Moreland, 15 Ohio 445; Fed. Cas. No. 10613; Jackson v. Smith, 22 N. E. 431.

To constitute a direct attack upon a judgment, it is said, it is necessary that a proceeding be instituted for that very purpose.

> 1 Black on Judgments, Sec. 252; Cowdery v. Town of Caneadea, 16 Fed. 532, and Gray v. Larrimore, 10 Fed. Cas. 1028.

An undivided interest in a mining claim may be abandoned.

> Black v. Elkhorn Min. Co. 163 U. S. 445.

Dye showed his acquiescence in such sale by failing (as he admits) to move to set aside said judgment and proceedings thereunder for error or irregularity within one year from the rendition of the judgment, viz: from Decembe 31, 1898. He had more than eight months in which to make such motion, after he learned of the sale on reaching White Oaks on April 22, 1899. On this point our statute is as follows: "Judgments may be set aside for irregularity, on motion filed at any time within one year after the rendition thereof." Compiled Laws, Sec. 2685, Sub-Sec. 337.

Dye, therefore acquiesced in such sale of this prop-

Dye v. Crary.

erty; elected to abide by the result, by not contesting further, and by receiving the benefit of the payment of his debt to Taliaferro.

Acquiescence: laches;

> 2 Pom. Eq. Jud. Secs. 695, 818; Power v. Larrabee, 57 N. W. 789.

Dye's acquiescence in sale amounted to abandonment.

> Black v. Elkhorn Min. Co., 163 U. S. 445; Golden Tierra Min. Co. v. Mahler, 4 Morrison Min. Rep. 390.

Election: laches:

> Bigelow on Estoppel, pp. 562, 601; Morgan v. McKee, 3 Morrison Min. Rep., 128.

Equitable defenses may be made under the plea of the general issue in ejectment:

> 1 Enc. of Pl. & Pr. head of "Estoppel;" Compiled Laws (1897) Sec. 3165; Kirk v. Hamilton, 102 U. S. 68; Spragg v. Shriver, 1 Casey, 282, 287; Merrill v. Horn, 5 Ohio, N. S. 307; See also, Maple v. Kussart, 91 Am. Dec. 214; Spragg v. Shriver, 64 Am. Dec. 698.

Parties and privies are estopped:

> Bigelow on Estoppel, pp. 517-519; Idem. pp. 94 et seq.; Ratcliff v. Belfont & Co., 10 S. W. 365; Dickerson v. Colgrove, 100 U. S. 578; 10 "Cyc." 777 (note 29) 779 (note 35.) ; 2 Pom. Eq. Jur. Sec .813.

It is deemed an act of fraud for a party, cognizant all the time of his own right, to suffer another party ignorant of that right to go on under that ignorance, and purchase the property, or expend money in making improvements upon it.

> Tennessee C. & I. Co. v. McDowell, 47 S. W. 153; Truesdail v. Ward, 24 Mich. 117 (notes.) ; Storrs v. Barker, 10 Am. Dec. 316 (note.)

If one stands by and sees his own property sold by another, or dealt with by another, to or with third persons, he is estopped from afterwards setting up his own title against persons thus purchasing, or giving credit up-

on it, even though his own conduct result from mere carelessness or negligence, and with no real purpose to defraud.

> Cady v. Owen, 34 Vt. 597; Parkhurst v. Van Courtlandt, 14 Johnson (N. Y.) 43; Snow v. Hutchins, 35 N. E. (Mass.) 315, citing cases, 2 S. W. 154; Coogler v. Rogers, 7 So. 780, 391; The Bank of the U. S. v. Lee, 13 Pet. 107; Merchants' Bank v. State Bank, 10 Wall. 604; Morgan v. R. R. Co. 96 U. S. 716, 720; 16 Cyc. 759, et seq.

The doctrine of estoppel is applied with respect to representations of a party, to prevent their operating as a fraud upon one who has been led to rely upon them.

> Insurance Co. v. Mowry, 96 U. S. 5447-8; Morgan v. R. R. Co., 96 U. S. 716.

Where the parties stood silently by for years, while the occupant was making valuable and lasting improvements on the property, and redeeming it from the lien of the ancestor's debts, they would be estopped from afterwards asserting their claim.

> Dickerson v. Colgrove, 100 U. S. 578; Beardsley v. Foot, 14 Ohio St. 414; Bigelow on Estoppel, pp. 492-3, N. and cases cited; 16 "Cyc." p. 749; Note 46 (many cases cited.)

"A party's ignorance of the truth of the representation made by him will not, however, remove the estoppel, if he was in reason bound to know the fact, or if he wilfully shut his eyes to the fact, or turned away suspecting that otherwise facts would be disclosed at variance with those represented to exist, or if he made the representation in clear and positive terms without knowing whether it was true or false, or if his ignorance was the result of gross negligence."

> Bigelow on Estoppel, p. 530 et seq. (Notes) ; Pomeroy's Eq. Jur., Vol. 2, Sec. 809; Story's Eq. Decs. 385, 387, 388.

Definition of estoppel:

> 2 Story's Eq. 1546.

Dye v. Crary.

Party bound to know whether judgment against him is regular or not.

> Payment v. Church, 38 Mich., 776; Dezell v. Odell, 3 Hill (N. Y.) 215; Delaplaine v. Hitchcock, 6 Hill. 14.

Even if Dye learned after his representations that the sale was void, he is still estopped. Ignorance no excuse.

> Nelson v. Kelly, 8 So. Rep. 690.

The intent to defraud by representations immaterial.

> Patterson v. Hitchcock, 5 Morrison Mining Rep. 543; Henshaw v. Bissell, 18 Wall. 217, 271.

Knowledge of legal rights nor of the facts not always necessary.

> Tilton v. Nelson, 27 Barb. 595; Sullivan v. Colby, 71 Fed. 460; Appeal of Chase, 18 Atl. Rep. (Ct.) 96.

If Dye pretended to know, "it is wholly immaterial whether he had title or not"—

> Story's Eq. Sec. 193; Black v. Samons, 62 Pac. 240 and cases cited; 26 Mich. 216; Rice v. Bunce, 49 Mo.; Raley v. Williams, 73 Mo.; Kirk v. Hamilton, 102 U. S. 68.

Dye in his version of that final conversation, admits in effect that he gave them no warning.

> 2 Pom. Eq. Jur. Sec. 607; Two Rivers, etc., Co. v. Day, 78 N. W. 440; Dickerson v. Colgrove, 100 U. S. 578; Bigelow on Estoppel 531 (note 2.)

Dye is estopped by his laches:

> Patterson v. Hewitt, 11 New Mexico, 1; Power v. Larrabee, 57 N. W. 789.

Ignorance of facts and ignorance of law distinguished. Ignorance of law does not excuse.

> Black v. Sammons, 62 Pac. Rep. 290 and cases cited; Robbins v. Wood, 21 N. E., 934; Storrs v. Barker, 10 Am Dec. 316 (n); also in 6 Johns. Ch.

Holding under quit caim deed does not preclude purchaser from being held "bona fide" purchaser.

Moelle v. Sherwood, 1448 U. S. 21; also
13 Sup. Ct. Rep. 427.

When one of two innocent persons must suffer, he
whose negligence caused the loss must bear the conse-
quences.

McConnell v. Rowland, 37 S. E. 586,
(cases cited); Titus v. Morse, 63 Am. Dec.
665.

Taking advice of an attorney by party claiming the
estoppel does not show he did not rely on representations,
especially if representations made afterwards.

Robbins v. Moore, 21 N. E. 934.

Knowledge of rights by party alleged to be estopped,
not always necessary.

Horn v. Cole, 12 .Am. Rep. 111.

W. B. CHILDERS, for appellees.

As this case · has been before the court before and
has been very thoroughly considered and the statement
of facts is very fully set out in the reported decisions of
the· case, we will not make any further statement of facts.

Dye et al., v. Crary et al., 78 Pac. 533.

It is the settled law of this case that the attach-
ment proceedings were void on their face· and that no
title could be acquired by purchase of the property under
the sale made under said attachment proceedings.

Crary v. Field, 10 N. M. 257; Flournoy
v. Bullock & Co., 11 N. M. 101.

Propositions of law which were considered and de-
cided on the first appeal become the law of that particu-
lar case, and, whether right or wrong, must be adhered
to on a second appeal.

Balch v. Haas, 73 Fed. 975; Citing,
Thatcher v. Gottlieb, 19 U. S. App. 469, 8
C. C. A. 334, and 59· Fed. 872, and cases there
cited; ·Tyler v. Maguire, 17 Wall. 253, 283;
Supervisors v. Kennicot, 94 U. S. 498; Clark
v. Keith, 106 U. S. 464, 1 Sup. Ct. 568; Sizer
v. Many, 16 How. 98; Corning v. Nail Fac-
tory, 15 How. 478, 494; Sibbald v. U. S. 12
Pet. 488, 492; Martin v. Hunter, 1 Wheat.

304, 355; see also, Durant v. Essex, 101 U. S. 555; Hinckley v. Morton, 103 U. S. 764; Stewart v. Salamon, 97 U. S. 361; Sibbald v. U. S. 12 Peters 488; Notes to same, 3 Roses Notes, 753; West v. Bradshear, 14 Peters 51; 4 Roses Notes, 14; Washington Bridge Co. v. Stewart, 3 How. 424; 4 Roses Notes, p. 434.

In this last case it is said, with reference to the decree:

"Its having been affirmed by a divided court can make no difference as to the conclusiveness of the affirmance upon the rights of the parties."

The defendants treat all the matter of the alleged forfeiture and failure to do assessment work under the head of estoppel. There is not a single element of either estoppel or abandonment in them.

Turner v. Sawyer, 150 U. S. 584; 2 Lindley on Mines, Sec. 646; Union Con. S. M. Co. v. Taylor, 100 U. S. 37; 5 Mor. Min. Rep. 323; Colman v. Clements, 23 Cal. 245; 5 Mor. Min. Rep. 247; Mallett v. Uncle Sam Co. 1 Nev. 188; 1 Mor. Min. Rep. 17; Black v. Elkhorn Min. Co. 163 U. S. 451; Doe on the Demise of Bryan v. Bancks, 4 B. & A. 401, Kings Bench, 1821; 6 Mor. Min. Rep. 278; see, especially Waring v. Crow, 11 Cal. 366; 5 Mor. Min. Rep. 204; Wiseman v. Mc-Nulty, 25 Cal. 230; 6 Mor. Min. Rep. 326; 23 L. R. A. note on p. 123; Turner v. Sawyer, 150 U. S. 585; Brundy v. Mayfield, 15 Mont.; 38 Pac. 1067; Royston v. Miller, 76 Fed. 51; Jusice v. Bradley, 82 Fed. 555.

The burden of proof rests with the party asserting the forfeiture.

2 Lindley on Mines, Sec. 646, p. 1211; citing Saunders v, McKay, 5 Mont. 523; 6 Pac. 361; Christy v. Scott, was approved in Haws v. Victoria Copper Mining Co., 160 U. S. 317; Campbell v. Rankin, 99 U. S. 261; Atherton v. Fowler, 96 U. S. 513;; Belk v. Meagher, 104 U. S. 279; Glacier Mining Co.

Dye v. Crary.

v. Willis, 127 U. S. 471; Hammer v. Garfield, 130 U. S. 293; 2 Lindley on Mines, Secs. 645-6; N. M. etc. R. R. Co. v. Crouch, 4 N. M. 293; See, Roses Notes to Christy v. Scott, Vol. 5, p. 249; Belk v. Meagher, 104 U. S. 279; Ekhart v. Board, 113 U. S. 963; same case, 8 Fed. 693; Slavonia Mining Co. v. Peraside, 7 Fed. Rep. 337; Trevaskis v. Peard, 44 Pac. 246 (Cal.); Mills v. Fletcher, 34 Pac. 637 (Cal.); Utah Min. & M. Co. v. Dickert, 21 Pac. 1002; Robinson v. Imperial S. & M. Co., 5 Nev. 44; Winans v. Christy, Id. 78; Bequette v. Caulfied, Id. 278; Marshal v. Shater, 32 Cal. 194; Turner v. Aldridge (case No. 14,249); Christy v. Scott, 14 How. (55 U. S.) 290; Jones v. Easley, 53 Ga. 455; Oregon Cascades R. Co. v. Oregon Steam Co., 3 Or. 178; Eagle Woolen Mills Co. v. Monteith, 2 Or. 282; Mickey v. Stratton Federal Cases No. 9530; Tyler, Ej. 73; Day v. Alverson, 9 Wend. 233; Eagle Woolen Mills Co. v. Monteith, 2 Or. 282; Brown v. Brown, 45 Mo. 414; Fellows v. Wise, 49 Mo. 352; Butcher v. Rogers, 60 Mo. 140; Ames v. Beckley, 48 Vt. 395; 2 Greenl. Ev. Sec. 397; See, also, 29 A. & E. Ency. of Law, 706; Galloway v. Finley, 12 Peters, 395-6.

A tenant cannot deny his landlord's title.

Willison v. Watkins, 3 Peters 48; Duke v. Harper, 6 Yerger 285; 27 Am. Dec. 220; Hagar v. Wykoff (Okl.) 39 Pac. 281; a case as to public lands; (15 Wend.) 607; 3 Peters, 47; 19 Pick. 341; 4 Adol. & Ellis, 782, 809; 2 Smith's 1 C. 540; 2 Barn. & Adol. 278; Powell on Mortgages, 221, 1074, 1075; Peck v. Mallams, 10 N. Y. 545; Jackson ex dem. v. Spear, 7 Wend. 40 L.; Heermans v. Schmaltz, 7 Fed. 576.

The doctrine of estoppel by conduct, silence or declaration, is laid down in Bigelow as follows:

"The cases when carefully analyzed show that all

of the following elements must actually or presumably be present in order to an estoppel by conduct:

1. There must have been a false representation or concealment of *material* facts.

2. The representation must have been made with *knowledge* of the facts.

3. The party to whom it was made must have been *ignorant* of the truth of the matter.

4. It must have been made with the *intention* that the other party should act upon it.

5. The other party must have been *induced to act upon it.*"

Bigelow on Estoppel, pp. 484, 486.

Mere disappointment in expectation, or breach of promise or covenant relating to the future, cannot constitute an estoppel *in pais.* Citing

Langdon v. Doud. 10 Allen 433; Jorden v. Money, 5 H. L. Cas. 185; 2 Pom. Eq. Jur. Sec. 806; 3rd Ed. p. 1430.

The element of fraud is essential either in the intention of the party estopped or in the effect of the evidence which he attempts to set up.

Hill v. Eppley, 31 Penn. St. 334; Henshaw v. Bissell, 18 Wall 271; Biddle Boggs v. Merced Mining Co., 14 Cal. 368; Davis v. Davis, 26 Id. 23; Commonwealth v. Moltz, 10 Barr. 531; Copeland v. Copeland, 28 Me. 639; Delaplaine v. Hitchcock, 6 Hill, 616; Havis v. Merchant, 1 Curt. C. C. 136; Zuchtmann v. Roberts, 109 Mass. 53.

When the condition of the title is known to both parties, or both have the same means of ascertaining the truth, there can be no estoppel.

Crest v. Jacks, 3 Watts. 240; Knouff v. Thompson, 4 Harris, 361; Brant v. Virginia Coal & Iron Co., et al., 93 U. S. pp. 335 and 336.

"Acts done in partial reliance on representation.— It has been held that if, notwithstanding the representation of a fact relied on to sustain an estoppel, the person setting up the estoppel has still been obliged to inquire

Dye v. Crary.

for the existence of other facts and to rely upon them also to sustain the course of action adopted by him no estoppel can arise from such representation."

> 11 A. & E. Ency., 439 and Note 4, citing McMaster v. Insurance Co. 55 N. Y. 222, 14 Am. Rep. 239; Sturm v. Boker, 150 U. S. pp. 335, 336 and 337.

See also as to equal means of acquiring knowledge of title.

> Sloan v. Chambers, 48 Mich. 359, 12 N. W. 488; Slaton v. Bryant, 55 Miss.; Kingman v. Graham, 51 Wis. 217, 8 N. W. 187.

All holding no estoppel by silence when title was on record.

> Mueller v. Kaessman, 84 Mo. 329.

Where party could have obtained knowledge from the records.

> Clark v. Parsons (N. H.) 39, Atl. 900.

Holding one making improvements could not claim estoppel when true title was of record.

> Bank v. Bank, 83 Fed. Rep. 363; Sinckot v. Ry. Co. 16 Fed. 363; Willson v. McGehee, 13 S. E. 86 (Ga.); Ketchum v. Duncan, 96 U. S. 666; John Shillito & Co., v. McClung, 51 Fed. 876; Deery v. Cray, 5 Wall. 803; Houser v. Austin, 2 Idaho 190; 10 Pac. 44; Pearce v. Hardin, 54 N. W. 906; 95 Mich. 360; and cases cited; Pearce v. Andrews, 6 Cush. 4; Folrain v. Collins, 3 Mass. 328; Jameson v. Rixey, 94 Va. 64; 64 Am. St. Rep. 726; 26 S. E. 863; Steel v. Smelting Co. 106 U. S. 456.

SUPPLEMENTAL AND REPLY BRIEF FOR APPELLANTS.

The supreme court says in the case of Aetna Life Ins. Co. v. Town of Middleport, 124 U. S., 534: "The doctrine of subrogation is not applied for the mere stranger or volunteer who has paid the debt of another without any assignment or agreement for subrogation, without being under any legal obligation to make the

Dye v. Crary.

payment, and without being compelled to do so for the preservation of any rights or property of his own."

> Freeman on Void Judicial Sales. Sec. 52 and 53.

Dye *assumed* to know, and made the representations in positive terms. Estoppel may be pleaded against him.

> 2 Pom. Eq. Jur. Sec. 607 and 895.

Estoppel is available for and against parties and privies.

> Bigelow on Estoppel, pp. 94, 508, 517-519 (notes); 16 "Cyc." p. 777 (note 35, 2 Pom. Eq. Jur. Sec. 813; Bigelow on Estoppel, p. 517 (note 3.)

SUPPLEMENT AND REPLY BRIEF OF APPELLEES.

"In Gadsden v. Brown, Speer's Eq. (So. Car.) 37, 41, Chancellor Johnson says: 'The doctrine of subrogation is a pure unmixed equity, having its foundation in the principles of natural justice, and from its very nature never could have been intended for the relief of those who were at liberty to elect whether they would or would not be bound.

> Sanford v. McLean, 3 Paige, 122.

We also cite the case of

> German Savings and Loan Soc. v. De Lashmutt, 67 Fed. Rep. 399; Meyer v. Mintonye, 160 Ill. 421; Freeman on Void Judicial Sales, Secs. 52 and 53.

Subrogation is never enforced at the expense of a legal right.

> 27 A. & E. Ency. of Law, p. 205; Note 1, and cases cited; Singleton v. Touchard, 1 Black 342; cited in Bouldin v. Phelps, 12 Sawyer 315; 30 Fed. 561; Lerma v. Stevenson, 40 Fed. 359; Givins v. Carroll, 42 Am. St. Rep. 889; 18 S. E. 1030; Brown v. Rouse, 125 Cal. 645; 58 Pac. 267.

"Subrogation is an equitable right, and not a legal one, and can be enforced only in equity. It will not be enforced where it would be inequitable to do so, or where it would work injustice to others having equal equities."

Dye v. Crary.

Makeel v. Hotchkiss, 190 Ill. 311; 83 Am. St. Rep. 131; 60 N. E. 524.

As to remedy being merely one for reimbursement, see

6 Pomeroy's Eq. Jur. p. 1509; Note; Dickerson v. Colgrove, 100 U. S. 580; Steel v. Smelting Co. 106 U. S. 452.

"In actions of ejectment in the United States courts, the strict legal title prevails. If there are equities which would show the right to be in another, these can only be considered on the equity side of the federal courts."

Foster v. Mora, 98 U. S. 428; 11 A. & E. Ency. of Law, 533; and cases cited, Note 2; Ryan v. Staples, 76 Fed. 721; Young v. Commissioners, 51 Fed. 585; and see, Langdon v. Sherwood, 124 U. S. 74, 85, 8 Sup. Ct. 429.

## STATEMENT OF FACTS.

On the twenty-first day of April, 1887, Benjamin H. Dye, John D. Cockrill and Theo. W. Heman located the Compromise lode claim in the White Oaks mining district, in Lincoln county, New Mexico, the property in dispute in this action. Thereafter the plaintiff B. H. Dye, one of the original locators of said claim, acquired interests by deed and otherwise until he was the owner of five-sixths of said claim, the other one-sixth being the property of the Apex Gold Mining Company, a corporation. On the eighth day of March, 1898, Jones Taliaferro commenced a suit against Dye to recover the amount due on two promissory notes for eighty dollars, and thirty-two dollars and forty-seven cents, and interest, respectively, in the district court of Lincoln county, by attachment, Dye being then absent from the Territory, and the writ of attachment was levied on certain lots in the town of White Oaks, New Mexico, and a tract of land near said town, and notice was given by publication; later an alias writ was issued and the mining claim in controversy levied upon and sold under the alias writ on February 18th, 1899, to Jones Taliaferro. At the

Dye v. Crary.

time of the sale Dye had not paid his share of the assessment work for 1898, which had been done by his cotenant, The Apex Gold Mining Company and at the time Taliaferro received the sheriff's deed and entered into possession of Dye's interest in the mining claim the Apex Company, by T. C. Johns, had advertised for forfeiture which time would have expired on July 5th, 1899, the period in which Dye might redeem. On June 15th, 1899, Taliaferro paid this money to Johns and took his receipt therefor. Dye returned to the Territory in the latter part of April, 1899, and upon his return learned that the mining claim had been sold by attachment and that Jones Taliaferro was in possession of it as purchaser at such sale. Taliaferro leased to Crary and Heiniman with an option to buy the property on June 5th, 1900; in August, 1900, Crary and Heiniman made the discovery of rich ore and bought the property under their option contract, the deed bearing date October 1st, 1900, though the price was not paid or the deed delivered until late in November, 1900. Dye in the meantime had taken no steps to ascertain the condition of the attachment proceedings; in fact, he told several parties that he had lost his interest in the Compromise, that it went to pay a debt and that he considered it well sold; during the time the option contract was in operation between Taliaferro and Crary and Heiniman that he had lost his interest in the claim; after the rich discovery was made he told Crary in answer to the direct question that he had no interest in the claim and "wished him well," as Crary expressed it. In the meantime Crary and Heiniman had expended several thousand dollars upon the claim; after making the rich discovery they obtained an abstract of title and employed an attorney to look the title up, including the attachment proceedings and the sheriff's sale thereunder to Taliaferro; after being assured by their attorney that the attachment proceedings were regular and the title good, they paid Taliaferro the fifteen hundred dollars under the option contract and received a quit-claim deed to the claim. About November 20th, Dye wrote Mr. Childers, an attorney at law, at Albuquerque, and had him look up the attachment suit, and upon being informed by Chil-

ders that the sheriff's sale under the attachment proceedings and the judgment in that case were void, he and Childers, to whom he had deeded an interest, commenced this suit in ejectment for the possession of the mining claim. After suit was commenced both Crary and Heiniman, the original defendants, sold all their interest in the property and conveyed the same by deed to Jones Taliaferro, Charles Spence and Joseph E. Spence, and afterwards Mr. Harvey B. Fergusson acquired an interest in the property, and one Van Schoick also acquired an interest later, all of the defendants who are now interested having become so since this suit was instituted, and with knowledge of its pendency.

## OPINION OF THE COURT.

MANN, J.—At the January, 1904, term of this court this case was heard on appeal from the district court of Socorro county, from a judgment in favor of the defendants and reversed and remanded to that court for further proceedings in conformity with the opinion in the case. Dye et al., v. Crary et al., 78 Pac. 533.

It was held in that opinion that there was no authority for an alias writ of attachment at the time the alias writ was issued in Taliaferro v. Dye, in the district court of Lincoln county, and that property levied upon under such writ gives the court no jurisdiction, and that consequently the judgment against Dye in that court, and the sale of the property in controversy, was absolutely void. The court having so held, whether right or wrong, it thereupon became the law of this case and is controlling upon this court, so that the question of the validity of the alias writ and the proceedings of the court thereunder cannot be reviewed here. The evidence being substantially the same.

This court, spaking through Mr. Justice McFie, in Crary v. Field, 10 N. M., 257, quoted with approval the following language from Phelan v. San Francisco, 20 Cal. 45.

"A previous ruling by the appellate court upon a point distinctly made may be only authority in other cases, to be followed and affirmed, or to be modified or

Dye v. Crary.

overruled, according to its intrinsic merits, but in the case in which it is made it is more than authority; it is a final adjudication, from the consequences of which the court cannot depart, nor the parties relieve themselves."

In Flournoy, et al., v. Bullock, et al., 11 N. M., Mr. Chief Justice Mills, in the opinion of the court says: "According to well settled principles. of law and the decision of this court, in the case of Crary v. Field, 61 Pac. 118, the former decision of this court when this case was here before on appeal (Rice v. Schofield, 9 N. M. 314), so far as it states the law, is the law of the case,. and will not be reviewed by this court on this hearing.

This seems to be the universal rule. Balch v. Hass. 7⅃ Fed. 975; Supervisors v. Kennicott, 94 D. S. 498; Ex-Parte Sibbald, 12 Peters, 487; Seizer v. Many, 16 How. 97; Corning et al., v. The Troy & Nail Factory, 15 How. 451, 466; Roberts v. Cooper, 20 How. 457; Durant v. Essex County, 101, U. S., 555;; Stewart v. Salamon, 97 U. S. 361.

The facts presented with reference to the attachment proceedings are identical with those presented on the former appeal and cannot now be reviewed; the law expressed in the former opinion, so long as it stands unreversed, is the settled law of this case.

The next question arising is whether or not defendant Dye is estopped by his actions and conduct from asserting title to the Compromise Mining claim, the property in dispute,. or, in other words, whether his acts have raised him an equitable estoppel.

Whether certain acts, misrepresentations or silence on the part of a person will raise an equitable estoppel against him from claiming title to real property depends largely upon the circumstances in each individual case, and such a plea is addressed to the conscience of the trial court, whether in equity and good conscience he should be allowed, under the circumstances, to set up and establish such a claim. True, such an estoppel may be raised in courts of law, but the principle is one of equity.

Equitable estoppel is defined as: "A right arising from acts, admissions, or conduct which have induced a change of position in accordance with the real or appar-

Dye v. Crary.

ent intention of the party against whom they are alleged." Bigelow on Estoppel (4th Ed.) 445.

"An estoppel (which) presupposes error upon one side and fault or fraud upon the other, and some defect of which it would be inequitable for the party against whom the doctrine is asserted to take advantage." Anderson L. Dict.

"This estoppel arises where one, by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts." 16 Cyc. 722.

Bouvier defines it as an estoppel "such as arises from the acts and declaration of a person by which he designedly induces another to alter his position injuriously to himself." 1st Bouvier (Rowles Revision) 694.

There are, however, certain well defined and essential elements which must enter into the acts, conduct or representations of the party against whom the estoppel is sought to be raised, in order to constitute an equitable estoppel.

"The following elements must be present in order to constitute an estoppel by conduct: 1. There must have been a representation or concealment of material facts. 2. The representation must have been made with knowledge of the facts. 3. The party to whom it was made must have been ignorant of the matter. 4. It must have been made with the intention that the other party would act upon it. 5. The other party must have been induced to act upon it. 1st Bouvier (Rowles Revision) 695; Bigelow on Estoppel, 484.

"In order to constitute an equitable estoppel there must exist a false representation, or concealment of facts; it must have been made with knowledge, actual or constructive, of the facts; the party to whom it was made must have been without knowledge or the means of knowledge of the real facts; it must have been made with the intention that it should be acted upon; and the party

to whom it was made must have relied or acted upon it to his prejudice." 16 C. Vol. 726.

Bearing in mind these definitions and elementary principles of the doctrine of equitable estoppel, is Dye estopped by his acts and conduct from now asserting his title to the mining claim in controversy?

His acts which are set up as raising an equitable estoppel against him are: 1. Faiulre to attack the judgment and proceedings in the attachment case, directly within the time prescribed by law. 2. That he had told strangers to this action, (McIver, Robertson and others) that he had lost his interest in the property, and 3. That he told the original defendants, Crary and Heiniman, before they purchased under the option from Taliaferro, "That there could be no other claimant unless it was himself (Dye) and he had allowed his time to lapse and made no further claims to the property." This in answer to the direct question of Hicniman as to whether the title to this property, the Compromise mine, was all right. (See deposition of Crary p. 219, Record.)

In treating of this question it must be borne in mind that the sale under the attachment proceedings was absolutely void and that therefore the grantor to Heiniman and Crary had absolutely no tile to convey; that such proceedings were matters of record and equally available to Dye, Crary and Heiniman; that all these conversations with Dye took place after Crary and Heiniman took the option from Taliaferro, and after the big strike and most of the expenditure upon the claim; that it is undisputed that Dye had no actual knowledge of the invalidity of the attachment proceedings until after the actual sale from Taliaferro to Crary and Heiniman. The judgment and sale in the attachment case being absolutely void and subject to collateral attack, (Dye v. Crary, 78 Pac. 533,) it necessarily follows that Dye was under no obligation to attack it directly and his failure to do so was not an abandonment of his rights. It would be folly to say that a judgment was void and subject to collateral attack and then add that because one did so attack it he thereby lost his rights.

The conversation between Dye and the witnesses

Robertson, McIvers, Despain, Fuston, Thomas, Alexander and perhaps others, in which Dye stated that he had lost his interest in the Compromise by lapse of time, or by the attachment proceedings, clearly do not constitute an equitable estoppel, for the reason that neither of these witnesses are, nor never have been interested in the property in controversy, nor does it appear that the parties claiming the land were told of these conversations, or in any manner acted upon them, or that they came to their knowledge until after this suit was brought, or at most, after Heiniman and Crary purchased from Taliaferro, Moore v. Boyd, 74, Cal. 167; Harvey v. West, 87 Ga. 553; Davis v. Davis, 26 Cal. 23.

Dye was not informed that his statements to these witnesses might affect his rights or would be relied upon by anyone. Hackett v. Callender, 32 Vt. 97; Scharman v. Scharman, 58 Neb. 39; Allen v. Shaw, 61 N. H. 95.

As to the direct statement from Dye to Heiniman and Crary there is little or no controversy. Mr. Crary says: (p. 219 Record) "Mr. Dye was there (at the mine) and Mr. Heiniman asked him, I can hardly remember the exact words, but in substance whether the title to this property, the Compromise mine, was all right. Mr. Dye replied that there was some drawn ground between it and the Scranton on the side that would belong to the Scranton. It was an over-lap; and that there could be no other claimant, unless it was him, and he had allowed his time to lapse and made no further claims to the property. He also added, I hope you will do well with the property, and make lots of money out of it."

Mr. Heiniman, (at page 191 of the record) says: "Mr. Dye visited the mine and while there in presence of Mr. Alexander and Mr. Crary, I told him that I was about to make the payment for the property in full, and I asked him if he knew of any conflicting claim or any other claims on the Compromise. He immediately answered there was. The Scranton claim took off about a hundred feet, and he said as to other claims there would be nobody but himself. And he says I have allowed all my time to lapse and I have no claim whatever. With

that he wished me success and hoped it would prove a good mine."

Mr. Dye (p. 286 record) says: "I have no doubt that I have told him, Mr. Heiniman, in various conversations that we have had on all manner of subjects that I had at one time owned five-sixths of the Compromise mine. I have no doubt that I have told him, as I have told anybody else who made it their business to inquire of me, that fact. Q. What fact? A. That I had been the owner of five-sixths of the Compromise mine, and that it was sold out under attachment in my absence from the territory."

Granting that the conversation took place as testified by Mr. Heiniman, the most favorable to the defendants, it does not contain many of the essential elements of an equitable estoppel. Dye did not know of his rights; at least, he had no actual knowledge, as shown by the very language attributed to him: "I have allowed all my time to lapse and have no claim whatever," was a mere statement of his supposed legal rights, and not of a matter of fact. At that time (October 23rd) he had not been advised of his rights by Mr. Childers, and if he made the statement, did so under the impression and belief that the attachment proceedings were regular and valid.

"An admission, in order to constitute an estoppel, must relate to an admission of fact, and a person will not be estopped by an admission as to the law." 16 Cyc. 756. Citing: English v. Dycus, 8 Ken. L. Rep. 331; Brewster v. Stryke, 2 N. Y. 19; Crawford v. Lockwood, 9 How. Pr. (N. Y.) 547; Daub v. Northern Pac. Ry. Co., 18 Fed. 625.

In Huffman v. Nixon, (Mo.) 75, Am. St. Rep. 454, Mr. Justice Robinson, in delivering the opinion of the court at page 459-60, says: "As to the two remaining contentions of defendant and which (judging from the briefs filed herein) must have been the controlling question, in the mind of the trial court, in the making of its judgment. First, that the sheriff sold and plaintiff bought only the equity of redemption of J. B. Kelsey in the land in controversy, and second, that he should now be estopped to assail the deed of trust conveying the land, on account of his declaration and conduct, and the an-

swer filed by him in the Knoop case recognizing its val-
idity, notwithstanding the court may think and find the
deed of trust in fact to have been .fraudulent in its in-
ception, we have this to say: The proof shows that the
sale was made in the ordinary way and that the sheriff
sold all the right, title, and interest of the execution
defendant in the land. The sheriff simply acted under
and in conformity to the statute, and in virtue of the
judgment of the court, and the law under which he act-
ed conveyed all the interest and estate of the execution
defendant in the land sold. If the land in fact was sub-
ject to a prior value deed of trust (regardless of the
manner of the sale), the purchaser would have only
bought the equity of redemption of the original grantor,
and execution defendant, while, on the other hand, if
the sale had been made subject to the so-called deed of
trust in express terms and the same should afterwards
be discovered fraudulent, and without regard to what the
execution purchaser thought of it, at the time of the
sale, or what he afterward said or offered to do, by the
answer in the suit of Koop against the Kellys, Nixon,
and himself in 1892, when Koop attempted to have the
sale set aside, it could and did not affect the interest
purchased by him, and he cannot now be estopped by
what was done or said from setting up the fraudulent
origin and character of the deed of trust by those who
have lost nothing by his belief, declaration or answer
filed."

If Dye had no knowledge of the actual character of
the proceedings against him and that they were void for
want of jurisdiction, then there could have been no fraud-
ulent representation or concealment on his part; when he
had the conversation with Crary and Heiniman.

In Brant v. Virginia Coal & Iron Co., 2 et al., 93
U. S., 326, Mr. Justice Field (at page 335) says: "It
is difficult to see where the doctrine of equitable estoppel
comes in here. For the application of that doctrine
there must generally be some intended deception in the
conduct or declarations of the party to be estopped, or
such gross negligence on his part as to amount to con-
structive fraud, by which another had been misled to

Dye v. Crary.

his injury. 'In all this class of cases,' says Story, 'the doctrine proceeds upon the ground of constructive fraud or of gross negligence, which in effect implies fraud. And, therefore, when the circumstances of the case repel any such inference, although there may be some appearance of negligence, yet courts of equity will not grant relief. It has been accordingly laid down by a very learned judge that the cases on this sujbect go to this result only, that there must be positive fraud or concealment, or negligence so gross as to amount to constructive fraud.' 1 Story's Eq. 391, to the same purpose is the language of the adjudged cases."

And on page 337: "It is also essential for its application with respect to the title of real property that the party claiming to have been influenced by the conduct or declarations of another to his injury was himself not only destitute of knowledge of the true state of the title, but also of any convenient and available means of acquiring such knowledge. Where the condition of the title is known to both parties, or both have the same means of ascertaining the truth, there can be no estoppel. Crest v. Jack, 3 Wates, 240; Knauff v. Thompson, 4 Harris, 361."

In Henshaw v. Bissell, 18 Wall. 255, the same judge says: (p. 271): "An estoppel in pais is sometimes said to be a moral question. Certain it is that to the enforcement of an estoppel of this character, such as will prevent a party from asserting his legal rights to property, there must generally be some degree of turpitude in his conduct which has misled others to their injury. *Conduct or declarations founded upon ignorance of ones rights have no such ingredient,* and seldom work any such result. There are cases, it is true, where declarations may be made under such circumstances that the party will be estopped from denying any knowledge of his rights; but these are exceptions and do not affect the correctness of the general rule as stated." Smith v. Sprague, 119 Mich. 138 (75 Am. St. Rep. 384.)

Nor can it be said that Dye was guilty of such negligence as would amount to a fraud in law. As soon as he discovered the invalidity of the judgment and sale

of his property, he immediately brought this suit. It may be said that Dye had constructive notice of the invalidity of the proceedings, but that contention acts as a two edged sword and if he is charged with notice, how much more so were the defendants, Crary and Heiniman, the proposed purchasers from Taliaferro? It seems also to be a well settled rule of law that where all parties have an equal opportunity to determine the true facts there is no estoppel. 16 Cyc. 741, Strum v. Baker, 150, U. S 312; Brant v. Virginia Coal Co., 93 U. S., 326.

Another essential element of equitable estoppel in this case is lacking, in that Crary and Heiniman did not rely upon the statements of Dye as to the condition of the title to the Compromise mine. The evidence shows that they procured an abstract of the title and employed an attorney to examine these very proceedings and relied at least in part, upon his report. I quote from pages 205-6 of the record, Mr. Heiniman being on the stand. "Q. What report did your attorney make to you about that? A. He told me that he examined the record carefully, and paid the clerk $4.00 to assist him in going through the records, *and he reported to me that all proceedings of this sheriff's sale was regular* and that everything was of record and that so far as that was concerned, I would be perfectly safe to handle the property. Q. Now, when you came to handling the property and making this payment, did you rely upon Dye's statement to you, or the opinion of your attorney and this abstract? A. *I relied upon all these.*"

"It is an essential element of equitable estoppel that the person invoking it has been influenced by and relied on the representations or conduct of the person sought to be estopped; but in all cases the representation or conduct must of itself have been sufficient to warrant the action of the party setting up the estoppel, and if notwithstanding such representation or conduct he was still obliged to inquire for the existence of other facts and to rely upon them also to sustain the course of action adopted, he cannot claim that the conduct of the other party was the cause of his action, and no estoppel will arise." 16 Cyc. 736, Citing: McMaster v. Insurance Co., of N.

Am. 55 N. Y., 222; Deer Lodge Bk. v. Hope Min. Co., 3 Mont. 146; Firt National Bank v. Peetz, 186 Pa. St. 204; 11 Am. & Eng. Ency. of Law, 439.

Defendants contend that Dye had forfeited his rights to his co-owner Johns, and that Taliaferro, the purchaser at the sheriff's sale under the attachment proceedings, by paying to Johns the amount due from Dye, for the assessment work of 1898, suceeeded thereby to Johns' rights and became the owner by reason of the forfeiture. They contend that Sec. 3126 C. L. subrogates them upon the payment to Johns, to his rights. But that section contemplates a *valid judicial sale,* and this sale being void would give them no such rights, even if their contention as to that be correct. But we cannot concur in defendants' view, either, that there was a forfeiture, or that if such was the case that Taliaferro by his payment to Johns succeeded to his rights or to Dye's. Clearly Taliaferro, when he made the payment, did so to protect the interest he acquired, if any, by the sale under the attachment—indeed, such is the contention of counsel. (Supp. & Reply Brief, p. 2-3.) This being true Taliaferro was not attempting to create or buy an outstanding title, but to protect the title obtained through Dye. The alleged forfeiture was never completed because the money was paid to the co-owner before the ninety days after the conclusion of the advertisement, under Sec. 2324 R. S. U. S., and Taliaferro having acquired no rights under the void sale, was a mere volunteer and was not subrogated to the rights of anyone.

But there is another, and it seems to us, a conclusive reason why there was no forfeiture. The record discloses that the title to the one-sixth interest was in the Apex Gold Mining Company, a corporation, while the notice was given by T. C. Johns. Johns was a stranger to the title and while there is evidence that he was the manager of the Apex Gold Mining Company, yet he could not have given the notice in his own name. Statutes of forfeiture are strictly construed and must be strictly complied with. A notice to Dye that Jones had performed the labor as co-owner with him and that the title would be forfeited to him, was no notice that the

Apex Gold Mining Company, his real co-owner was attempting to advertise him out. Turner v. Swayer, 150 U. S. 578.

The testimony of Walsh (p. 228 Record), shows that he did the work for the Apex Company. The testimony of Taliaferro (p. 253 Record), shows that the one-sixth interest was not in Johns' but in the Apex Company. Just why we should assume that Johns was the owner of the one-sixth interest in his own right, in the face of this testimony of defendants' witnesses, does not appear.

"The burden of proof rests with the party asserting the forfeiture." 2 Lindley on Mines, Sec. 646.

The judgment of the court below was right, and is therefore affirmed.

Wm. H. Pope, A. J., Ira A. Abbott, A. J., concur.

Mills C. J., and McFie, A. J., dissent from the conclusions of the majority of the court.

Parker, A. J., having heard the case below, did not sit.