[No. 1643, February 23, 1914.]

JAMES R. SMITH, et al., Appellees, v. THE CITY OF RATON, et al., Appellants.

SYLLABUS (BY THE COURT)

1. Sub-sections 6 and 67, section 2402, C. L. 1897, examined; Held, that the first paragraph of sub-section 6, authorizing the issuance of municipal bonds for certain purposes, and providing the procedure therefor, which portion of said sub-section was enacted as a part of sec. 14, chap. 39, S. L. 1884, was not repealed, modified or amended by sub-section 67, enacted as sec. 1 of chap. 70, S. L. 1897.

P. 620

2. The first paragraph of sub-section 6 of section 2402, C. L. 1897, is not inconsistent with any provisions of the State Constitution and was therefore continued as a law of the State by virtue of section 4 of article XXII of our Constitution.

P. 622

3. Under the power granted to cities and towns by sub-section 5, sec. 2402, C. L. 1897, to erect all needful buildings for the use of the city or town, such municipalities are limited to the erection of such needful buildings as may be required for public uses, or for municipal uses and purposes

and contradistinguished from private or quasi-public uses, and, if the primary object of a building to be constructed is a municipal purpose, the fact that it may be incidentally used for theatrical purposes, may not have the effect of rendering the action in erecting it invalid; but where the paramount purpose and object is for other than strictly municipal purposes, legislative authority is lacking in this State, for the erection of such buildings by cities and towns.

P. 623

Appeal from the District Court of Colfax County.; Thomas D. Leib, District Judge; affirmed.

E. C. CRAMPTON, HUGO SEABERG, O. L. PHILLIPS, R C. ALFORD, Raton, N. M.; CHARLES A. SPIESS, E. Las Vegas, N. M., for appellees.

Appellants failed to file with the proper officer of the city of Raton, prior to the election, an estimate of the approximate cost of the proposed improvements, and therefore the proceedings initiated for the incurring of the indebtedness in erecting the so-called municipal building, and for the issuance of bonds therefor, were illegal and void. C. L. 1897, sec. 2402, sub-sec. 67; Laws 1897, ch. 70; Const. of N. M., art. IX, secs. 12 and 13.

Constitutional provisions and statutes are subject to the same rule of construction with reference to amendment, repeal, intent and meaning. Prouty v. Stover, 11 Kans. 285, 26 Pac. 183; Prohibitory Amendment cases, 24 Kans. 700, 30 Pac. 499; Franklin v. Westfall, 27 Kans. 619, 31 Pac. 614; Cleveland v. Spartanburg, 54 S. Car. 83, 31 S. E. 871; C. L. 1897, sec. 2900; Butts v. Woods, 4 N. M. 349; Laws 1884, ch. 39, sec. 14; Lanigan v. Gallup, 131 Pac. 997.

The Constitution preserved in force all laws of the Territory of New Mexico not inconsistent with its provisions. Const. N. M., art. XXII, sec. 4.

The provisions of the statute requiring an estimate to be filed before election are mandatory. Moore v. Matton, 45 N. E. 567; City of Booneville v. Stevens, 95 S. W.

314; Moss v. City of Fairbury, 92 N. W. 721; City of
Dallas v. Ellison, 30 S. W. 1128; City of Dallas v. At-
kins, 32 S. W. 780; Edwards v. Cooper, 79 N. E. 1049;
Leibole v. Frankston, 83 N. E. 781; McLauren v. Tatum,
67 N. E. 561; Kirksville v. Coleman, 77 S. W. 120; Lip-
pincott v. Pana, 92 Ill. 24; Manhattan Co. v. Ironwood,
74 Fed. Rep. 535, and cases cited; McClure v. Township
of Oxford, 74 U. S. 429, 24 L. Ed. 129; sec. 14, ch. 39,
Laws 1884, was repealed by ch. 70, Laws 1897.

Where a later act covers the whole subject matter of an
earlier act, and embraces new provisions, it operates by
implication to repeal the prior act. Koons v. Cluggish, et
al., (Ind. App.) 34 N. E. 651; Lowe v. Board of Commis-
sioners, 51 Pac. 579; Board v. Shoemaker, 27 Kans. 77;
Stetson, etc., v. Brown, 59 Pac. 507; Missouri Pac. Ry.
Co. v. Park, 71 Pac. 586; Baca v. Board of Commission-
ers, 10 N. M. 438, 62 Pac. 979; Petitti v. State, 121 Pac.
278.

Right of appellees to bring suit at this time. Cramp-
ton v. Zabriskie, 101 U. S. 601, 25 L. Ed. 1070; Bayle v.
New Orleans, 23 Fed. 843; Harrington v. Plainview, 6
N. W. 777; Willard v. Comsaock, 17 N. W. 401; Wilker-
son v. Van Orman, 30 N. W. 495; Bradford v. San Fran-
cisco, 44 Pac. 912; Fowler v. City of Superior, 54 N. W.
805; Winamac v. Huddleston, 31 N. E. 561; Dillon on
Municipal Corps. (5th ed.) vol. 4, secs. 1579-1585; Id.,
vol. 1, sec. 215, and cases cited.

It was not within the power of the city council to ap-
propriate public money to the use of building an opera
house, or a building whose main object was that of an
opera house. Water Supply Co. v. City of Albuquerque,
128 Pac. 77; In re Mayor, 99 N. Y. 569, 99 N. E. 642;
Sun Publishing Co. v. Mayor, 152 N. Y. 257, 46 N. E.
499, 47 L. R. A. 788; Dibble v. Town of New Haven, 56
Conn. 199; Dunham v. Hyde Park, 75 Ill. 371; Mitchell
v. Board of Co. Commrs., 132 Ind. 540; Torrent v. Mus-
kegon, 47 Mich. 115; Parker v. Concord, 71 N. H. 468;
Greeley v. People, 60 Ill. 19; Clark v. Brookfield, 81 Mo.
503; Attorney General v. Burrell, 31 Mich. 25; Bates v.
Bassett, 60 Vt. 530; City of Denver v. Hallett, 34 Colo.

393; State v. Barnes, 22 Okla. 191, 97 Pac. 997; Brooks v. Brooklyn, 124 N. W. 668, 26 L. R. A. (N. S.) 425; Sugar v. Monroe, 108 La. 677, 59 L. R. A. 723; 32 So. 961; Wheelock v. Lowell, 196 Mass. 220, 124 Am. State Rep. 543, 81 N. E. 977, 12 Am. & E. Ann. Cas. 1109; Stetson v. Kempton, 13 Mass. 272, 7 Am. Dec. 145; Kingman v. Brockman, 153 Mass. 255, 11 L. R. A. 123, 26 N. E. 998; Spaulding v. Lowell, 23 Pick. 71; Opinion of the Justices, 182 Mass. 605, 66 N. E. 25, 60 L. R. A. 592; White v. Stamford, 37 Conn. 586; McQuillan on Corps., vol. 3, sec. 1117; State v. Gilbert, 56 Ohio St. 575, 47 N. E. 551, 38 L. R. A. 519; State v. Lynch, 102 N. E. 670; Fiske, Civil Gov. in the United States, p. 31; Worden v. New Bedford, 131 Mass. 24, 41 Am. R. 185; Mead v. Acton, 139 Mass. 341, 1 N. E. 413; Jenkins v. Andover, 103 Mass. 94; Greenbanks v. Boutwell, 43 Vt. 207; Egan v. City and County of San Francisco, decided in California, June 11, 1913.

Municipal corporations have only the powers expressly conferred and such as are necessarily incident to those expressly granted or essential to the declared objects and purposes of the corporation. Dillon Municipal Corps., (5th ed.) sec. 357; Von Schmidt v. Widber, 105 Cal. 151; Gassner v. McCarthy, 160 Cal. 82.

H. L. BICKLEY, J. LEAHY, H. M. RODRICK, Raton, N. M.; PERSHING & TITSWORTH, Denver, Colo.; ALBERT T ROGERS, JR., E. Las Vegas, N. M., for appellants.

Sub-section 67, of sec. 2402, C. L. 1897, became void and inoperative by the adoption of the Constitution of New Mexico. Art. IX, sec. 12.

It was not the intention of the legislature, in adopting said sub-sec. 67, to repeal sub-sec. 6; Laws 1897, ch. 70, sec. 1; Laws 1884, ch. 39, par. 14; C. L. 1897, sec. 2402, sub-sec. 6.

Municipal officers should be allowed freedom, and should not be restricted by judicial construction of statutes, in the expenditure of money simply for those purposes nec-

essary for the physical existence of such city. Dissenting opinion in the case of State v. Lynch, 102 N. E. 670.

## STATEMENT OF FACTS.

Plaintiffs below, appellees here, brought this action in the District Court of Colfax County, as residents and tax-payers of the City of Raton, seeking to enjoin the defend-ants, below, the City of Raton and its officers, from con-structing a so-called municipal building, and issuing bonds for that purpose. By an ordinance adopted March 15, 1912, the question of authorizing the city council to contract an indebtedness on behalf of the city by issuing its said bonds therefor "in an amount not exceeding $25,-000, for the purpose of erecting public buildings in and for the City of Raton," was submitted to the qualified elec-tors of the city at the general election of April 2, 1912, at which election the proposed bond issue was aushorized by the requisite majority of the qualified electors. There-after, the municipal authorities caused to be prepared cer-tain plans and specifications, which were approved by the building committee and the city council, it being the in-tention of the said city council to construct the building according to said plans and specifications if they could pay for it.

A preliminary restraining order was issued by the Dis-trict Court and was subsequently made permanent, the opinion of the District Court being based upon the fol-lowing propositions, to-wit., 1st, that appellants failed to file with the proper officer of the City of Raton, prior to said election, a carefully prepared estimate of the approxi-mate cost of the proposed improvement, as specified in chapter 70 of the Session Laws of 1897, the same being sub-section 67 of section 2402 of the Compiled Laws of 1897; 2nd, that the municipal building sought to be built under the proceedings herein, was about to be erected for an opera house; that the main object of said building, as shown by the plans and specifications introduced in evi-dence, was an opera house, and all other purposes or uses sought to be made of said building were incidental. Both of which propositions were fully covered by findings of

fact, appearing in the final decree of the District Court, in substantially the language quoted, supra.

## OPINION OF THE COURT.

HANNA, J.—Our first inquiry is directed to the validity of the election of April 2, 1912, upon the proposed bond issue by the City of Raton, notwithstanding the absence of a sworn estimate of the approximate cost of the proposed building, which was required by sub-section 67 of section 2402, C. L. 1897, defining powers of municipalities.

It has been decided by this Court in Lanigan v. Town of Gallup, 17 N. M. 627, 131 Pac. 997, that sections 12 and 13 of article IX, of the Constitution, limiting the powers of municipalities in the creation of debt, are not self-executing. Appellants concede this and contend that full and ample legislative authority for the issuance of the bonds in question is to be found in sub-section 6, of section 2402, (C. L. 1897), with the provisions of which sub-section the City of Raton has fully complied.

Under the provisions of this sub-section, all municipalities were authorized to contract an indebtedness and issue bonds for specified purposes, including the erection of public buildings, provided, no debt be created, except for supplying the city or town with water, unless the question of incurring the same shall, at a regular election of officers for the city, be submitted to a vote of such qualified electors as shall have, in the preceding year, paid a property tax, and a majority of those voting shall vote in favor of creating such debt. Sub-section 6 of section 2402, C. L. 1897, as compiled, is derived from two sources. The first paragraph of the sub-section was a part of section 14, chapter 39, S. L. 1884, entitled, "An Act to incorporate Cities and Towns." The second paragraph of the sub-section was enacted as section 4, of chapter 46, S. L. 1893, and provides for special elections to vote upon issuing bonds "for the construction of sewers, or other public improvements."

Sub-section 67 of section 2402, (C. L. 1897) was enacted by the legislature of 1897, as section 1, of chapter

70, entitled, "An Act Relating to Municipal Corporations." This sub-section (67) in terms provided that any incorporated city, town or village having a population of at least one thousand, should have power to erect and operate water works, etc.; to construct public buildings, etc.; to issue bonds for the purposes mentioned, limited, however, as to a total bonded indebtedness of not to exceed four per centum of the value of taxable property therein; provided, before such bonds could be issued a special election be held, upon notice prescribed in the act, and that two-thirds of the legal votes cast at such election be in favor of the issue of the bonds; that a special tax be levied each year to provide a sinking fund and to pay the interest on the bonds; that a carefully prepared estimate of the approximate cost of the proposed improvement must be filed with the clerk, or other proper officer, and no bonds issued in excess of such estimate. The act further provided for the execution of the bonds; the denominations thereof; the term thereof and the interest thereon; and sale at not less than par, with other minor details not necessary to this discussion.

This act, somewhat in detail, defined the powers of municipalities upon the subject of borrowing money and issuing bonds for four purposes, viz.: constructing public buildings, sewers, waterworks and gas works, all of which powers had been conferred by the act of 1884, compiled as the first paragraph of sub-section 6 of section 2402, C. L. 1897.

The essential differences between the two sub-sections is as follows:—Sub-section 6 provides for a vote upon the issuance of the bonds at a *regular* election and an authorization by a majority of the qualified electors, who have paid a property tax the preceding year, while sub-section 67 provides for a special election and authorization of the bond issue by an affirmative vote of two-thirds of all legal votes cast at such election. It is also worthy of note that sub-section 67 conferred upon municipalities power to borrow money and issue bonds to provide means for protection from fire, and, to lay off and improve streets and alleys; failing, however, to cover certain powers conferred

by sub-section 6, viz.: the purchase of water works, construction of canals, purchase of canals, purchase of gas works, purchase of illuminating gas and to pay deficiency in the treasury.

From the fact that sub-section 67 did not cover all the purposes of sub-section 6, and provided for special elections as distinguished from regular elections, and the further fact that 67 in terms provided that the municipalities within the purview of the act "shall have all powers now given by law to icorporated towns," it is earnestly contended by counsel for appellants, that it was not the intention of the legislature, in adopting sub-section 67, to repeal sub-section 6. The repealing clause of the Act, including sub-section 67, did not specifically repeal sub-section 6, but contained the usual formula, "all acts or parts of acts in conflict with this act are hereby repealed."

In this connection it is ably contended by counsel for appellees that both sub-sections 6 and 67 are complete bonding acts, in which all necessary requirements are provided and that sub-section 67 impliedly repeals sub-section 6, so far as repugnant.

It is so generally recognized that courts should give such construction to statutes, apparently in conflict, that both may stand, that citation of authority is unnecessary. Likewise it is universally conceded that repeals by implication are not favored and are not to be indulged in unless it is evident that the legislature so intended.

It is to be presumed that the legislature had in mind all existing laws upon the same subject at the time it gave consideration to and passed a statute. If there be no express reference to the existing statute, or apparent intention on the part of the legislature to repeal the same, it is to be concluded, and it is a sound canon of construction, that the legislature did not intend to abrogate the former law, relating to the same matter, unless the later act is clearly repugnant to the prior one, or completely covers and embraces the subject matter thereof, or unless the reason for the prior act is removed.

In this case appellees contend that the later act covers the former act, but a careful study of both does not warrant

such conclusion. Not only are several purposes of the earlier act not included within the later act, but the later act may well be considered as intended simply to enlarge the powers conferred by the first act and provide for special elections in addition to a general election as provided by the Act of 1884.

In this connection our discussion is limited to that portion of sub-section 6 as passed by the legislature in 1884. The latter portion of the sub-section, adopted in 1893, is probably repugnant to the provisions of sub-section 67, and, therefore, repealed by that sub-section. This portion of sub-section 6 is not involved in the present case and it is, therefore, not necessary for us to pass upon the question of its repeal at this time.

Other than as thus qualified we are of the opinion that sub-sections 6 and 67, while dealing with the same subject matter in a general way, were not necessarily repugnant, but were designed to effect different objects, i. e., the method of holding the election upon the question, and, except as qualified, are both to be considered as existing statutes of the Territory at the time of its admission as a State.

Therefore, in view of our conclusion that both sub-sections 6 and 67 were existing laws of the Territory of New Mexico at the time of its admission as a State, except so far as the second paragraph of sub-section 6 may be repugnant to the provisions of sub-section 67, it only remains necessary for us to consider whether either, or both, of the sub-sections referred to were inconsistent with the provisions of the Constitution, and for that reason were not carried forward under statehood, because of the provisions of the Constitution set forth in section 4 of article XXII, which provides as follows:

"All laws of the Territory of New Mexico in force at the time of its admission into the Union as a State not inconsistent with this Constitution, shall be and remain in force as the laws of the State until they expire by their own limitations or are altered or repealed."

In this connection it becomes quite evident that the first paragraph of sub-section 6 is in full conformity with and not in any way inconsistent with section 12 of article IX of the Constitution. And this being the law under which the City of Raton attempted to conduct its election, and there being no controversy as to the compliance with this section, the question is clearly disposed of, and it does not seem necessary to us at this time to consider the effect of the Constitution upon sub-section 67. It might be argued that the provisions of sub-section 67 inconsistent with the Constitution, would be inoperative by reason of the repugnance of inconsistency, but that the provisions of the Constitution in this respect, being self-executing, would supplement the provisions of sub-section 67, and constitute a comprehensive law upon the subject, when read together with the self-executing provisions of the Constitution. This aspect of the question has not been presented for our consideration, and it is unnecessary for the purposes of this case to now decide that sub-section 67 is in force in whole or in part, or affected by reason of self-executing provisions of the Constitution which might be read into the act, or considered in connection with it, for which reason we deem it best not to pass upon the question of the status of sub-section 67, at this time.

For the reasons heretofore given, we are of the opinion that the absence of the sworn estimate of the approximate cost of the proposed improvement, prescribed by the terms of sub-section 67, did not constitute an omission which would invalidate the election of April 2, 1912, and that the decree of the honorable District Judge in this respect is therefore erroneous.

We, therefore, pass to the consideration of the second phase of the question, namely, that the court erred in holding that the so-called municipal building, sought to be built under the proceedings had, was to be erected as and for an opera house, that the main object of said building, as shown by the plans and specifications introduced in evidence, was an opera house, and all other purposes or uses sought to be made of the building, were incidental, and

that it is not within the power of the city council to appropriate public money to the use of the building of an opera house, or of a building whose main object was that of an opera house.

It appears from the evidence in the case, that plans and specifications for a proposed municipal building had been approved, and that it was the intention of the city council to construct a municipal building in accordance with such plans and specifications, provided the city had the funds available for the construction of the building, and that there was a divergence in the evidence as to the probable cost of the building constructed in accordance with such plans and specifications. It is conceded that the cost must not exceed the funds lawfully available for the purpose, and that if no other funds be available except the proceeds of the proposed bond issue, then the cost should not exceed $25,000. It is also conceded by appellants to be their desire to construct a municipal building containing not only suitable offices for the officials, but a public hall, or auditorium of sufficient capacity to accommodate public meetings of the people of Raton, and of such character as to afford facilities for public entertainments, theatrical or otherwise. In this connection it is pointed out by appellees and evidently borne out by the facts, and certainly by the finding of the District Judge, that a very large portion of the building would be devoted to such an auditorium, equipped as an opera house, with stage, boxes and seating accommodations, even dressing rooms having been provided by the architect.

Numerous authorities have been cited by both appellants and appellees, but we do not desire to make this opinion unduly lengthy by a consideration of the numerous decisions, all of which have been examined and carefully considered.

After thorough consideration of all the authorities cited in the briefs of counsel, we have reached the conclusion that, if the primary object of a building to be constructed is a municipal purpose, the fact that it may be incidentally used for theatrical purposes may not have the effect of rendering the action in erecting it invalid.

Bates v. Bassett, 60 Ver. 530, 15 Atl. 200, 1 L. R. A. 166; Jones v. Camden, 44 S. C. 319, 23 S. E. 141, 15 Am. St. 819.

It is, of course, well settled that a municipal corporation has such powers, and such only, as are, first, expressly granted, or, second, such as are fairly and necessarily implied from those granted; or third, such as are essential to the declared purpose of the incorporation. Brooks v. Brooklyn, 124 N. W. 668, 26 L. R. A. (N. S.) 425.

By appellants it is contended that the City of Raton clearly had the power to erect the building contemplated, under, and by virtue of, the provisions of sub-sections 5, 56, and 6, of section 2402, C. L. 1897, which sub-sections are as follows:

"5.   To erect all needful buildings for the use of the city or town.

"56.   To provide for the erection and care of all public buildings necessary for the use of the town.

"6.   To contract an idebtedness by borrowing money or of issuing bonds for the purpose of ferecting public buildings."

It is not our desire to put a strict construction on the grant of statutory power to municipalities, nor is it our intention to judicially legislate upon the question of the power granted in this instance. It is doubtless true that the power can be given to municipalities to construct opera houses, or other buildings of like character. We fully appreciate that municipalities are called upon in the present day and age for the exercise of powers not heretofore considered necessary to be exercised by municipalities. But notwithstanding this fact, we believe that it is for the legislature and not for the courts to extend the powers of municipalities to meet modern conditions, and after careful consideration of the statutes quoted, we are constrained to believe that the powers therein conferred must be limited to the erection of such needful buildings as may be required for public uses, or for municipal uses and purposes as contradistinguished from private or quasi-public uses, such as the one under consideration. In considering this phase of the present case, we must bear in

mind that the learned District Judge found as a matter
of fact, and incorporated in his decree, the conclusion that
the particular building here in question was about to be
erected by the said City of Raton, "as and for an opera
house; that the main object of said building, as shown by
the plans and specifications introduced in evidence, was
an opera house, and all other uses sought to be made of
such building were merely incidental."

Thus we find that the issue as presented to the District
Court was resolved by him as clearly showing a paramount
use of the building for other than strictly municipal pur-
poses. It is contended that the courts cannot control the
discretion of the municipal authorities said to exist be-
cause it is urged that it is for the city council, or city
authorities, to determine what is or what is not a municipal
or public purpose. While we concede the general rules
with regard to the discretion of municipal officers in the
exercise of certain functions of government, we do not
think this is a case where the rule can be applied. In the
present instance, the question under consideration is
rather one of whteher the use to which the money of the
taxpayer is to be applied is a public one, which becomes
a question of law as limited and defined by the statutes
upon the subject, and to be resolved and considered in the
light of the rules of construction, which, in our opinion,
are the outgrowth of a disposition on the part of the
courts to arrive at not only a reasonable rule of construc-
tion, but one not tending to cast upon the taxpayer obli-
gations which his citizenship in the community do not
necessarily impose.

We do not disagree with the views of the Supreme Court
of Massachusetts, as announced in the case of Kingman
v. Brockton, 153 Mass. 255, 11 L. R. A. 123, that it is
not incompetent for a city to appropriate public money
for the erection of the building which is larger than its
present needs for municipal purposes require. We agree
that the municipality may allow such portions of such
building to be used for other purposes than municipal,
either for a stipulated rent, or price, or gratuitiously, and
that in erecting a public building a city need not limit

the size to actual existing needs but may make reasonable provision for probable future needs.

In concluding this opinion, we desire to observe that appellants have here contended that the relief afforded to plaintiffs below in this case, should not go to the extent of a prohibition against the issuance of municipal bonds for the purpose of constructing a public building in the City of Raton, of a reasonable character. In other words, that the injunction granted should be directed to the char- acter and plan of the proposed building rather than a gen- eral prohibition. In support of this view of the matter it is urged that the city council had not undertaken to adopt final plans and specifications, nor had it attempted to let a contract for any particular kind of building; that until it did so, the court was necessarily, in granting the relief, striking at a mere conjecture. While it is true that the record discloses evidence that it was the intention of the city council to proceed in the erection of the building in accordance with the plans and specifications which had been approved, provided the city found itself possessed of sufficient funds to do so, there would seem to be some merit in the contention of appellants, and we believe it is clear from the foregoing opinion that we hold that the election and authorization of the bonds was in full con- formity with our statutes governing such matters. We are also clear in our opinion that this Court is bound by the finding of the District Court that the paramount pur- pose of this building was for other than municipal uses and purposes.

Therefore, the injunction granted by the District Court, in our opinion, was properly issued so far as this phase of the question is concerned.

While it appears from the examination of the final de- cree that the District Court found that the estimate of the approximate cost of the proposed improvement had not been filed with the proper officer in the City of Raton, as required by chapter 70 of the Session Laws of 1897, which appears as sub-section 67 of section 2402, C. L. 1897, with which conclusion of the District Court as to a necessity therefor, we are unable to agree, nevertheless it appears

State ex rel., v. Sargent, 18 N. M. 627.

that the injunction was directed against the erection of the particular building referred to in the complaint, and the plans and specifications. There is substantial evidence to support the finding that the city council was about to erect a building in conformity with such plans and specifications, and such as referred to in the complaint, and in view of the fact that the District Court had an opportunity of hearing the witnesses and considering this phase of the question, and can therefore better judge concerning the weight of this evidence, for which reason we are not disposed to disturb the finding.

Wherefore, inasmuch as the permanent injunction was limited in its effect to a restraint upon the authorities in the matter of the erection of this particular building, we consider that the injunction was proper, and the decree of the lower court should be affirmed, and it is so ordered.

SYLLABUS (BY THE COURT)

