[No. 2696. May 29 1923. Rehearing denied June 15, 1923]

## WOLFORD v. MARTINEZ et al.

### (SYLLABUS BY THE COURT.)

(1) When it is shown that the title of any person to negotiable paper is defective, the burden shifts to and rests upon the holder thereof to show that he, or some person under whom he holds, acquired the same in good faith, for value, and without notice of any infirmity in such paper or of any defect in the title of the person negotiating it.

P. 625.

(2) The right to recover a bank draft which is lost in a gambling game, as provided in section 2510, Code 1915, does not include the right to recover from a holder thereof in due course without notice of such facts.                    P. 625.

Appeal from District Court, Union County; Leib, Judge.

Suit by Jabe Wolford against J. B. Martinez, the Farmers' State Bank of Texhoma, Okl., and others. From a judgment for defendant bank, plaintiff appeals. Reversed and remanded, with directions.

Joseph Gill, of Clayton, for appellant.

O. T. Toombs, of Clayton, for appellee Farmers' State Bank of Texhoma, Okl.

## OPINION OF THE COURT.

BRATTON, J.   This suit was instituted by the appellant, Jabe Wolford, against J. B. Martinez, J. W. Campbell, Mrs. J. W. Campbell, and Farmers' State Bank of Texhoma, Okl., to cancel, annul, and declare void a certain bank exchange, hereinafter described, to restrain the appellees from further negotiating such exchange, and to compel the surrender of the same.

It was charged in the complaint that on or about December 13, 1920, at Clayton, N. M., the appellant and the appellee J. W. Campbell engaged in a gambling game, to wit, poker, during which the appellant lost to the said Campbell all of the money he then had; that thereupon the appellee J. B. Martinez induced him to procure a bank draft for $500 with which to further play at said game in an effort to recoup such losses; that he thereupon gave his check in the sum of $500 to the said Martinez, with directions that he purchase therewith from the Clayton National Bank bank draft or exchange for that amount; that the said Martinez did purchase from such bank exchange upon the First National Bank of Denver, Colo., in the sum of $500, payable to the order of the said Martinez; that such exchange was the property of the appellant, and

that the said Martinez delivered the same to him; that he then placed the same as stakes in said game, and lost it to the appellee J. W. Campbell; that the said J. W. Campbell and the said J. B. Martinez, knowing the appellant intended to stop payment on said exchange, delivered the same to appellee Mrs. J. W. Campbell, and sent her, together with one J. J. Myers, to the appellee Farmers' State Bank of Texhoma, Okl., for the purpose of cashing and collecting the same; that the said bank knew the said J. J. Myers was by profession a gambler and of low moral character; that said bank cashed such exchange; that payment thereof by the First National Bank of Denver had been stopped and that the Farmers' State Bank of Texhoma still held the same. The appellant prayed that said exchange be declared null and void, that it be canceled, that the appellees, and each of them, be restrained from further negotiating the same, and that the appellee Farmers' State Bank of Texhoma be required to surrender the same for such cancellation.

The appellee bank demurred to this complaint upon numerous grounds. The court sustained the demurrer, reciting in the order that such bank was, under the facts pleaded, the lawful holder and owner in due course of such draft. The appellant elected to stand upon his complaint, and the judgment was thereupon rendered in favor of the bank, from which this appeal has been perfected.

Section 2507, Code 1915, provides for the recovery of money or property which may be lost at any game at cards or any gambling device. It is in this language:

"Any person who shall lose any money or property at any game at cards, or at any gambling device, may recover the same by action of debt, if money; if property, by action of trover, replevin or detinue."

Section 2510 provides that all judgments, securities, bonds, bills, notes, or conveyances which are won at gambling shall be void, and may be set aside or vaca-

ted by any court of equity upon bill filed for that pur-
pose by the person giving the same, as well as certain
others.   This section thus provides:

"All judgments, securities, bonds, bills, notes or con-
veyances, when the consideration is money or property won
at gambling, or at any game or gambling device, shall be
void, and may be set aside or vacated by any court of
equity upon a bill filed for that purpose, by the person
so granting, giving, entering into, or executing the same
or by any creditor or by his executors, administrators, or
by any heir, purchaser or other persons interested therein."

We think this section is broad enough to include
bank drafts or bank exchange.   The statute is very
comprehensive, and was designed to discourage gam-
bling by depriving the person winning any of the
things therein enumerated of any title thereto, and by
providing the right to recover the same, not only to
the person losing the same, but to his wife, children,
heirs, executors, administrators, and even his creditors.
The territorial court, in speaking of these statutes in
Mann v. Gordon, 15 N. M. 652, 110 Pac. 1043, said:

"And the right to recover money lost or to avoid any
bond, etc., given in consideration of money lost at gambling
is given not only to the person but to his wife, children,
heirs, executors, administrators and creditors.

"So it will be seen that the statute is very broad and
comprehensive.   It seems intended that the loser at gam-
bling may recover for any loss and for the loss of any-
thing of value whatsoever."

[1]   We think, however, the court erred in holding
that, under the facts pleaded, and which were ad-
mitted by the demurrer, the bank was a holder in due
course of the draft in question.   By virtue of the sta-
tutes quoted, clearly J. W. Campbell, who won the
draft from the appellant, and took it directly from
him, held a defective title thereto.   This being true,
and the bank holding subsequent to him, the burden
shifted to it to show that it, or some person under
whom it claimed, acquired the title thereto as a holder
in due course.

Section 653, Code 1915, provides:

"Every holder is deemed prima facie to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as holder in due course. But the last-mentioned rule does not apply in favor of a party who became bound on the instrument prior to the acquisition of such defective title."

This statute was construed by this court in Gebby v. Carrillo et al., 25 N. M. 120, 177 Pac. 894, wherein the plaintiff sued upon a certain promissory note. The maker of the note defended upon the ground that the note had been acquired through fraud and misrepresentation. The plaintiff was not the payee in the note, but was a subsequent purchaser thereof, and it was held by this court that, when it was shown that the title of the original payee in the note was defective, the burden shifted to the plaintiff to show that he became the holder of such note before it was overdue, and without notice that it had been previously dishonored, if such was the fact; that he took it in good faith for value, and that the time it was negotiated to him he had no notice of any infirmity in the note or defect in the title of the person negotiating it. The court there said:

"As has been shown from what has been heretofore stated, appellee was the victim of an imposition devised and executed by the agents to sell the stock, under the influence of which he signed the note in question. Assuming the sufficiency of the evidence to show fraud and imposition, the burden was upon the appellant to show that he acquired title to the paper in due course. Section 653, Code 1915.

"To remove this burden he was required to show by competent evidence: (1) That he became the holder of the note before it was overdue and without notice that it had been previously dishonored, if such was the fact; (2) that he took it in good faith for value; and (3) that at the time it was negotiated to him he had no notice of any infirmity in the note, or defect in the title of the person negotiating it."

The same burden here rested upon the bank. The title of J. W. Campbell was defective, and it was therefore incumbent upon the bank to assume the burden

of showing that it took the draft in good faith, and that at the time it so took the same it had no notice of any infirmity in such draft or defect in the title of the person negotiating the same to it. It was not required to assume the burden of showing that it paid value for the same, as that fact is admitted in the complaint. We further think, when the bank had discharged the burden of proving these facts, it would then become a holder in due course, and would be entitled to recover.

Section 646 defines a holder in due course of commercial paper. It provides:

"A holder in due course is a holder who has taken the instrument under the following conditions:

"I. That it is complete and regular upon its face;

"II. That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;

"III. That he took it in good faith and for value;

"IV. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

. Section 651 provides that such a holder in due course holds the instrument free from any defect of title of prior parties, and free from any defense available to prior parties among themselves. It is in this language:

"A holder in due course holds the instrument free from any defect of title of prior parties, and free from defense available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon."

[2] The right of a person losing money or property to recover the same, in the manner prescribed by sections 2507 and 2510, Code 1915, would not apply to a holder in due course of the same as prescribed by sections 646 and 651, Code 1915. Sections 2507 and 2510 appear to be parts of an act passed January 24, 1857, while sections 646 and 651 are a part of an act passed March 21, 1907, commonly known as the Uni-

form Negotiable Instruments Act. Being subsequent acts of the Legislature, they would, by implication, modify the earlier law, in so far as the right to cancel such instruments when in the hands of a holder in due course are concerned.

For the reason stated, the judgment is reversed, and the cause remanded, with directions to proceed in accordance herewith; and it is so ordered.

PARKER, C. J., and BOTTS, J., concur.